UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LINDSAY LIEBERMAN,                                    **Docket No.:**

                         *Plaintiff,*

                                                      **COMPLAINT**

     -against-

                                                      **PLAINTIFF DEMANDS**
C.A. GOLDBERG, PLLC & CARRIE A. GOLDBERG,             **A TRIAL BY JURY**

                         *Defendants.*
-------------------------------------------------------------------X

Plaintiff Lindsay Lieberman, as and for her Complaint, all upon information and belief, respectfully alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1332, in that Plaintiff's claims exceed the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

2.     Venue is proper under 28 U.S.C §1391(b) because the events underlying this action occurred within the Eastern District of New York and because the Defendants reside in this District.

## IDENTITY OF THE PARTIES

3.     At all relevant times mentioned herein, Plaintiff Lindsay Lieberman ("Lieberman") was employed by Defendants C.A. Goldberg, PLLC and/or Carrie A. Goldberg until March 5, 2021, when she was terminated because of her gender, pregnancy and maternity leave.

4.      Defendant C.A. Goldberg, PLLC ("C.A. Goldberg" or "the firm") is a Brooklyn-based law firm that represents victims of stalking, harassment, revenge porn, sexual assault and abuse.

5.      Defendant Carrie A. Goldberg ("Goldberg") is an attorney and the Principal of C.A. Goldberg, PLLC and, upon information and belief, resides in the County of Kings, City and State of New York.

6.      Lieberman is a resident of Rhode Island and she performed her services as an attorney remotely for Defendants, who are based in Brooklyn, New York.

7.      There is complete diversity between the parties in this action brought under the New York City and State Human Rights Laws and, in the alternative, the Rhode Island Fair Employment Practices Act and the Rhode Island Civil Rights Act.

**<u>BACKGROUND RELEVANT TO ALL CAUSES OF ACTION</u>**

8.      Lieberman began working as a Senior Associate attorney at C.A. Goldberg in or around August 2016.

9.      Prior to joining the firm, Lieberman had served as an Assistant District Attorney in Kings County, working as a Felony Trial Assistant in the Special Victims Unit, and gained experience in cases involving sexual violence.

10.     After Lieberman responded to a social media posting reflecting C.A. Goldberg's interest in hiring a Senior Associate, Goldberg courted Lieberman to join the firm, promising growth, additional responsibilities and a three-month paid maternity leave.

11.     Lieberman's compensation consisted of a salary and quarterly bonus that Lieberman was entitled to receive based on the revenue she generated, which bonus Lieberman did receive until she became pregnant.

12.     At all relevant times, Lieberman was fully qualified for her position and executed her duties successfully, as confirmed by her achievements for the firm and the positive feedback she received.

13.     By way of example, Lieberman brought in important revenue to the firm and Goldberg routinely praised Lieberman's work and told her that she was particularly well-equipped to handle some of the firm's most challenging and/or demanding clients.

14.     In or around December 2017, Lieberman relocated to Rhode Island.

15.     When Lieberman conveyed to Goldberg that she would be relocating and could continue to work remotely, Goldberg viewed Lieberman's move as an opportunity for the firm to build a presence in Rhode Island.

16.     To that end, Lieberman sat for and passed the Rhode Island Bar Exam in the summer of 2019, joined the Rhode Island Women's Bar Association, gave presentations on the firm's practice areas in Rhode Island and accepted a client in Rhode Island, all with Goldberg's knowledge and accord.

17.     Nevertheless, the majority of Lieberman's responsibilities remained in the New York City metropolitan area and Lieberman routinely returned to New York City at her own expense for firm business.

18.     In or around February 2019, Lieberman and her husband received the joyful news that she was pregnant with her first child, who would be born in October 2019.

19.     Lieberman advised Goldberg of her pregnancy after the end of her first trimester in or around May 2019.

20.     Despite her years of contribution, Goldberg's view of Lieberman diminished after she learned of Lieberman's pregnancy.

3

21.     Contrary to Goldberg's public persona as an advocate for women's rights, Goldberg discriminated against Lieberman because of her pregnancy and gender and treated her less well because she took maternity leave.

22.     Only by way of example, Goldberg failed to pay Lieberman her first quarterly bonus in 2019, the documentation for which was submitted shortly after Goldberg learned of Lieberman's pregnancy, and Goldberg also shut down discussions about increasing Lieberman's salary in line with what Goldberg had described when encouraging Lieberman to leave the District Attorney's office to join the firm.

23.     Nevertheless, Lieberman continued to perform well and bring in revenue.

24.     Lieberman's maternity leave began in October 2019 and she remained available to her colleagues during her maternity leave.

25.     Lieberman continued to address Goldberg's refusal to pay her bonus, including in an email she sent on November 11, 2019 identifying additional bonus compensation that was owed to her.

26.     Goldberg continued to ignore Lieberman's requests and did not respond to Lieberman's email.

27.     Although Goldberg had told Lieberman when courting her to join the firm that her maternity leave would be paid, C.A. Goldberg reneged on this benefit and did not pay Lieberman her salary during her maternity leave.

28.     In January 2020, Lieberman and Goldberg spoke by phone, at which time Goldberg asked Lieberman when she was returning to work, saying, in sum and substance, that Lieberman's maternity leave "has obviously affected the firm's finances and I need to know if I need to hire

another attorney," clearly attempting to cause Lieberman to feel guilt and shame for having a baby and taking maternity leave.

29.     Although Goldberg, on the call, referenced the fact that both Lieberman and a male attorney named Adam Massey ("Massey") had taken parental leave, Massey, who is a male, had only taken approximately one month off, so Goldberg's criticism about parental leave impacting the firm was meant to single out Lieberman.

30.     Lieberman responded that she would return the first week of March 2020 and reminded Goldberg about both the Q1 2019 bonus and the additional bonus compensation that Lieberman had outlined in her November 2019 email.

31.     Goldberg responded that she could not pay Lieberman the 2019 bonus – which she had started earning almost a year earlier – because two of her attorneys, Lieberman and Massey, had taken parental leave.

32.     Lieberman knew that Massey had only taken approximately four weeks of parental leave, so Goldberg was clearly citing Lieberman's maternity leave as the reason Lieberman could not receive her 2019 bonus.

33.     Lieberman returned to work in early March 2020, shortly before the COVID-19 pandemic impacted the world economy.

34.     Nevertheless, Lieberman continued to work hard to service her clients and generate revenue for the firm.

35.     On June 21, 2020, Lieberman again emailed Goldberg and renewed her request for the 2019 bonus she had earned, and restated the mathematical basis for her bonus and citations to her accomplishments in 2019.

36.     Goldberg responded on June 30, 2020, and cited Lieberman's maternity leave as a reason for why Lieberman would not receive the bonus she had earned, stating:

> "Having two of my 4 1/2 attorneys (counting A[] is ½ b/c she's still not been admitted and requires an attorney on all matters involving legal advice) out on pregnancy leave for the last months of 2019 and into 2020 was one recent variable impacting the firm's finances…"

37.     Goldberg also cited the pandemic as an excuse for why she would not pay the bonus, even though Lieberman had earned the bonus a year earlier, before the pandemic.

38.     Despite Goldberg's refusal to pay Lieberman the bonus she earned, Goldberg's June 30, 2020 email confirmed Lieberman's value and contribution to the firm, stating, "You work hard and I can always rely on you," and, "Again, you are valuable to the firm. And you deserve every penny you're asking for and more."

39.     In or around September, 2020, Lieberman was finally able to speak with Goldberg on a Zoom call after several attempts to discuss the 2019 bonus, during which Goldberg told Lieberman that she was committed to paying Lieberman her bonus from 2019, that Lieberman was "worth every cent" and that she would start to pay the bonus in portions, but that she would need to spread the bonus out over several years.

40.     However, Goldberg also repeatedly told Lieberman during that Zoom call that the firm could not pay the full bonus owed because Lieberman's maternity leave had caused problems for the firm's finances, once more placing blame and guilt on Lieberman because she took maternity leave.

41.     In early January 2021, Goldberg held a "state of the union" address to the firm's staff over zoom, during which Goldberg listed the firm's accomplishments and setbacks during 2020.

6

42.     In listing the "setbacks" that the firm "suffered" and had to recover from in 2020, Goldberg identified "the pandemic, the death of a client and two parental leaves."

43.     Lieberman was shocked that Goldberg listed her maternity leave as a "setback" that the firm "suffered" and that Goldberg had connected Lieberman's leave to the tragic death of a client.

44.     Lieberman's colleagues confirmed over text that they shared Lieberman's concern about Goldberg's statements.

45.     Lieberman felt humiliated that Goldberg had now publicly expressed her contempt for Lieberman's maternity leave in front of the entire firm.

46.     Although Goldberg spoke positively of others in the firm, and boasted of the number of Twitter followers she gained in 2020, she failed to mention anything positive that Lieberman accomplished in 2020.

47.     Goldberg highlighted that another attorney had become licensed to practice law in New York, but gave no mention of the fact that Lieberman had become licensed to practice in Rhode Island.

48.     Goldberg sent a clear message to Lieberman that her value to the firm would not be recognized because she had taken maternity leave.

49.     In fact, one of Lieberman's colleagues wrote to her over text, "I'm really sorry about Carrie [Goldberg]'s parental leave comments and also leaving you out of the 'thank you's," confirming that Goldberg's disparaging statements about Lieberman's leave were noticed by others in the firm.

7

50.    Goldberg's statements about the detrimental impact of Lieberman and Massey's parental leaves did not even make sense, as the overlap of their two leaves was only approximately four weeks, yet Goldberg exaggerated the impact based on her discriminatory animus.

51.    Each employee at the "state of the firm" address was expected to identify three things that they were proud of, and when Lieberman said, "I have big news," she could see Goldberg glaring at her, which caused Lieberman to think Goldberg was concerned Lieberman was going to say she was pregnant again, though Lieberman was merely going to state that she had obtained an order of protection for a client that morning.

52.    Despite Goldberg's clear discriminatory animus against her, Lieberman continued to perform successfully, billed more than the other attorneys, and had numerous accomplishments in early 2021.

53.    Lieberman also continued to seek the remainder of the 2019 bonus that was owed to her, which was now almost two years overdue.

54.    After Lieberman sent many emails and reminders to Goldberg to schedule a meeting, Goldberg finally scheduled a call with Lieberman for March 5, 2021.

55.    At the start of the call, on March 5, 2021, before Lieberman could say anything, to her shock and surprise, Goldberg terminated Lieberman.

56.    Goldberg's explanation for terminating Lieberman was that her "work had been suffering," yet Goldberg had never criticized Lieberman's work or issued her any kind of warning and, to the contrary, had only provided positive feedback.

57.    Lieberman was particularly surprised because just two days prior, Goldberg had sent Lieberman positive feedback on an assignment Lieberman had submitted to her.

8

58.     Lieberman, who was taken aback, asked when her work had started suffering, to which Goldberg responded since March 2020 – the exact time that Lieberman returned from maternity leave, confirming yet again that Goldberg changed her perception of Lieberman's work because of Lieberman's pregnancy.

59.     Goldberg's claim of poor performance was a transparent pretext for Lieberman's unlawful termination, as Goldberg had only provided positive feedback and, in or around September 2020, Goldberg had cc'd Lieberman in an email where she referred to Lieberman as her "best lawyer" and commented in meetings that Lieberman was "so good" and "the best" at handling certain difficult clients and personalities.

60.     Goldberg's claim of poor performance was further contradicted by the fact that she initially proposed that Lieberman "transition" out of the firm over a number of months, demonstrating that Lieberman's work was not actually suffering since Goldberg would continue to trust Lieberman to represent the firm's clients for those months.

61.     The real reason that Lieberman was terminated was because of Goldberg's discriminatory animus against Lieberman for taking maternity leave and becoming a mother, and the possibility that Lieberman might take another maternity leave in the future, as Goldberg knew that Lieberman's daughter was then 18 months old.

62.     Further demeaning Lieberman, Goldberg offered to pay her the rest of the bonus that Lieberman was owed from 2019, but only if Lieberman signed a release waiving her ability to commence litigation based on her discriminatory termination, which Lieberman reasonably refused to do.

63.     As a result of Defendants' discriminatory conduct, Lieberman has suffered the adverse effects of gender discrimination, which includes damages to the quality of her life, her

9

self-esteem, self-respect and financial and emotional well-being because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Lieberman into the future.

64.    Here, Defendants' conduct towards Lieberman shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Lieberman's rights under the New York State Human Rights Law, or that their unlawful actions against Lieberman were so reckless as to amount to a disregard of Lieberman's rights, so that in addition to all the damages inflicted upon Lieberman and in addition to all the measure of relief to which Lieberman may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for their discriminatory conduct in order to deter them and others similarly situated from engaging in such conduct in the future.

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF LIEBERMAN AGAINST DEFENDANTS FOR GENDER DISCRIMINATION IN VIOLATION OF §8-107(1)(a) OF THE NEW YORK CITY HUMAN RIGHTS LAW**

65.    Lieberman repeats, re-alleges and incorporates in full paragraphs 1 through 64 of this Complaint as though fully set forth at length herein.

66.    At the time that Lieberman was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her gender and pregnancy.

67.    Throughout the time of her employment with Defendants, Lieberman was fully qualified for her position and was in a position to continue working in that capacity.

68.    Defendants treated Lieberman less well because of her gender and pregnancy, which culminated in Lieberman's termination on March 5, 2021.

10

69.     The circumstances surrounding Defendants' conduct towards Lieberman, including Goldberg's repeated references to Lieberman's maternity leave damaging the firm and being the basis for why she could not receive the bonus she earned, as well as the falsity of Goldberg's explanation of Lieberman's poor performance, gives rise to a very real inference that the actual basis for Defendants' conduct against Lieberman was the fact that Lieberman is a female who became pregnant and had a child.

70.     The aforementioned acts of Defendants constitute unlawful discrimination against Lieberman in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (referred to herein as "The New York City Human Rights Law"), which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . .[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

71.     As a result of Defendants' violations of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to Lieberman pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

72.     As a result of Defendants' discriminatory conduct, Lieberman has suffered actual and prospective financial loss, which Lieberman alleges to be in the amount of Two Million Dollars ($2,000,000).

73.     Here, Defendants' conduct toward Lieberman shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Lieberman's rights under the New York City Human Rights Law, or that their unlawful actions against Lieberman were so reckless

as to amount to a disregard of Lieberman's rights, so that in addition to the actual and prospective financial loss suffered by Lieberman, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

74.     Lieberman, therefore, seeks compensatory damages on this First Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

### AS AND FOR A SECOND CAUSE OF ACTION, IN THE ALTERNATIVE, AGAINST GOLDBERG INDIVIDUALLY FOR AIDING AND ABETTING DISCRIMINATION IN VIOLATION OF §8-107(6) OF THE NEW YORK CITY HUMAN RIGHTS LAW

75.     Lieberman repeats, realleges and incorporates in full paragraphs 1 through 74 of this Complaint, as though fully set forth at length herein.

76.     Should Goldberg be determined to not be individually liable under Administrative Code §8-107(a)(1) or §8-107(7) for any reason, then Goldberg should be held personally liable for aiding, abetting and compelling C.A. Goldberg's discrimination against Lieberman, as more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof.

77.     As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, Goldberg aided, abetted and compelled C.A. Goldberg's discrimination against Lieberman, so that, should Goldberg be deemed to have not been Lieberman's employer,

Goldberg should be held personally liable for unlawful aiding and abetting against Lieberman in violation of §8-107(6) of the New York City Human Rights Law, which states, *inter alia*:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

78.     Goldberg aided and abetted C.A. Goldberg to engage in the conduct complained of and, as a direct result, Lieberman has and will continue to suffer, among other things, a significant loss of income and benefits, emotional injuries, as well as other losses associated with the effects of Defendants' conduct upon Lieberman's employment, career, and life's normal pursuits.

79.     As a direct and proximate result of Goldberg's violation of the New York City Human Rights Law, Goldberg is individually liable to Lieberman pursuant to §8-502(a) of said statute for damages and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," as has been judicially established.

80.     As a direct and proximate result of Goldberg's conduct complained of herein, Lieberman has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to her career and emotional pain and suffering, so that Lieberman seeks in this Second Cause of Action compensatory damages in the amount of Two Million Dollars ($2,000,000).

81.     Here, Goldberg's conduct towards Lieberman shows that she acted with willful or wanton negligence, or recklessness, or a conscious disregard of Lieberman's rights under the New York City Human Rights Law, or that her unlawful actions against Lieberman were so reckless as to amount to a disregard of Lieberman's rights, so that in addition to all the damages inflicted upon Lieberman and in addition to all the measure of relief to which Lieberman may properly be entitled herein, Goldberg should additionally be required to pay punitive damages as punishment for her

discriminatory conduct in the further amount of Three Million ($3,000,000) Dollars, in order to

deter Goldberg and others similarly situated from engaging in such conduct in the future.

82.     Lieberman, therefore, seeks compensatory damages on this Second Cause of

Action, including, among other things, the emotional harm inflicted upon her in the sum of Two

Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000)

Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of

Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF
OF LIEBERMAN AGAINST DEFENDANTS FOR SEX
DISCRIMINATION IN VIOLATION OF CHAPTER 18, ARTICLE
15 OF THE NEW YORK STATE EXECUTIVE LAW §296(1)(a)**

83.     Lieberman repeats, re-alleges and incorporates in full paragraphs 1 through 82 of

this Complaint as though fully set forth at length herein.

84.     At the time that Lieberman was subjected to the discriminatory conduct described

herein, she was in a protected class under the New York State Human Rights Law because of her

sex and pregnancy.

85.     Throughout the time of her employment with Defendants, Lieberman was fully

qualified for her position and was in a position to continue working in that capacity.

86.     Defendants treated Lieberman less well because of her sex and pregnancy, which

culminated in Lieberman's termination on March 5, 2021.

87.     The circumstances surrounding Defendants' conduct towards Lieberman, including

Goldberg's repeated references to Lieberman's maternity leave damaging the firm and being the

basis for why she could not receive the bonus she earned, as well as the falsity of Goldberg's

explanation of Lieberman's poor performance, gives rise to a very real inference that the actual

14

basis for Defendants' conduct against Lieberman was the fact that Lieberman is a female who became pregnant and had a child.

88.     The aforementioned acts of Defendants constitute unlawful sex discrimination against Lieberman in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) ("New York State Human Rights Law"), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice: (a) For an employer . . . because of the . . . sex . . . of any individual . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

89.     As a direct and proximate result of Defendants' violation of the New York State Human Rights Law §296(1)(a), Lieberman was adversely affected in her employment, and did and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of Defendants' discriminatory conduct did and will continue to have a detrimental effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Lieberman alleges to be in the amount of Two Million Dollars ($2,000,000).

90.     Here, Defendants' conduct toward Lieberman shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Lieberman's rights under the New York State Human Rights Law, or that their unlawful actions against Lieberman were so reckless as to amount to a disregard of Lieberman's rights, so that in addition to the actual and prospective financial loss suffered by Lieberman, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

15

91.   Lieberman, therefore, seeks compensatory damages on this Third Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS AND FOR A FOURTH CAUSE OF ACTION, IN THE ALTERNATIVE, AGAINST GOLDBERG INDIVIDUALLY FOR AIDING AND ABETTING DISCRIMINATION IN VIOLATION OF §296(6) OF THE NEW YORK STATE HUMAN RIGHTS**

92.   Lieberman repeats, realleges and incorporates in full paragraphs 1 through 91 of this Complaint, as though fully set forth at length herein.

93.   Should Goldberg be determined to not be individually liable under the New York State Human Rights Law for any reason, then Goldberg should be held personally liable for aiding, abetting and compelling C.A. Goldberg's discrimination against Lieberman, as more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof.

94.   As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, Goldberg aided, abetted and compelled C.A. Goldberg's discrimination against Lieberman, so that, should Goldberg be deemed to have not been Lieberman's employer, Goldberg should be held personally liable for unlawful aiding and abetting against Lieberman in violation of §296(6) of the New York State Human Rights Law, which states, *inter alia*:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

95.   Goldberg aided and abetted C.A. Goldberg to engage in the conduct complained of and, as a direct result, Lieberman has and will continue to suffer, among other things, a significant

loss of income and benefits, emotional injuries, as well as other losses associated with the effects of Defendants' conduct upon Lieberman's employment, career, and life's normal pursuits.

96.     As a direct and proximate result of Goldberg's conduct complained of herein, Lieberman has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to her career and emotional pain and suffering, so that Lieberman seeks in this Fourth Cause of Action compensatory damages in the amount of Two Million Dollars ($2,000,000).

97.     Here, Goldberg's conduct towards Lieberman shows that she acted with willful or wanton negligence, or recklessness, or a conscious disregard of Lieberman's rights under the New York State Human Rights Law, or that her unlawful actions against Lieberman were so reckless as to amount to a disregard of Lieberman's rights, so that in addition to all the damages inflicted upon Lieberman and in addition to all the measure of relief to which Lieberman may properly be entitled herein, Goldberg should additionally be required to pay punitive damages as punishment for her discriminatory conduct in the further amount of Three Million ($3,000,000) Dollars, in order to deter Goldberg and others similarly situated from engaging in such conduct in the future.

98.     Lieberman, therefore, seeks compensatory damages on this Fourth Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS FOR A FIFTH CAUSE OF ACTION, IN THE ALTERNATIVE,
ON BEHALF OF LIEBERMAN AGAINST DEFENDANTS
FOR SEX DISCRIMINATION IN VIOLATION OF THE
RHODE ISLAND FAIR EMPLOYMENT PRACTICES ACT**

99.     Lieberman repeats, re-alleges and incorporates in full paragraphs 1 through 98 of this Complaint as though fully set forth at length herein.

100.    Should it be determined that Lieberman is not permitted to assert claims under the New York State Human Rights Law, Lieberman asserts her rights under the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws §§28-5-1 et seq.

101.    At the time that Lieberman was subjected to the discriminatory conduct described herein, she was in a protected class under the Rhode Island Fair Employment Practices Act because of her sex and pregnancy.

102.    Throughout the time of her employment with Defendants, Lieberman was fully qualified for her position and was in a position to continue working in that capacity.

103.    Defendants treated Lieberman less well because of her sex and pregnancy, which culminated in Lieberman's termination on March 5, 2021.

104.    The circumstances surrounding Defendants' conduct towards Lieberman, including Goldberg's repeated references to Lieberman's maternity leave damaging the firm and being the basis for why she could not receive the bonus she earned, as well as the falsity of Goldberg's explanation of Lieberman's poor performance, gives rise to a very real inference that the actual basis for Defendants' conduct against Lieberman was the fact that Lieberman is a female who became pregnant and had a child.

105.    The aforementioned acts of Defendants constitute unlawful sex discrimination against Lieberman in violation of §28-5-7(1)(ii) of the Rhode Island Fair Employment Practices Act, which states, *inter alia*:

> It shall be an unlawful discriminatory practice: (a) For an employer . . . because of his or her . . . sex . . . to discharge an employee or discriminate against him or her with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment.

106.    As a direct and proximate result of Defendants' violation of the Rhode Island Fair Employment Practices Act, Lieberman was adversely affected in her employment, and did and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of Defendants' discriminatory conduct did and will continue to have a detrimental effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Lieberman alleges to be in the amount of Two Million Dollars ($2,000,000).

107.    Defendants' conduct toward Lieberman constitute malicious, willful and wanton violations of the Rhode Island Fair Employment Practices Act, so that in addition to the actual and prospective financial loss suffered by Lieberman, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

108.    Lieberman, therefore, and in the alternative, seeks compensatory damages on this Fifth Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in

this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS FOR A SIXTH CAUSE OF ACTION, IN THE ALTERNATIVE,
ON BEHALF OF LIEBERMAN AGAINST DEFENDANTS
FOR SEX DISCRIMINATION IN VIOLATION OF
THE RHODE ISLAND CIVIL RIGHTS ACT**

109.    Lieberman repeats, re-alleges and incorporates in full paragraphs 1 through 108 of this Complaint as though fully set forth at length herein.

110.    Should it be determined that Lieberman is not permitted to assert claims under the New York State Human Rights Law, Lieberman asserts her rights under the Rhode Island Civil Rights Act, R.I. Gen. Laws §§ 42-112-1 et seq.

111.    At the time that Lieberman was subjected to the discriminatory conduct described herein, she was in a protected class under the Rhode Island Civil Rights Act because of her sex and pregnancy.

112.    Throughout the time of her employment with Defendants, Lieberman was fully qualified for her position and was in a position to continue working in that capacity.

113.    Defendants treated Lieberman less well because of her sex and pregnancy, which culminated in Lieberman's termination on March 5, 2021.

114.    The circumstances surrounding Defendants' conduct towards Lieberman, including Goldberg's repeated references to Lieberman's maternity leave damaging the firm and being the basis for why she could not receive the bonus she earned, as well as the falsity of Goldberg's explanation of Lieberman's poor performance, gives rise to a very real inference that the actual basis for Defendants' conduct against Lieberman was the fact that Lieberman is a female who became pregnant and had a child.

115. The aforementioned acts of Defendants constitute unlawful sex discrimination against Lieberman in violation of §42-112-1(a) of the Rhode Island Civil Rights Act, which states, *inter alia*:

> All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

116. As a direct and proximate result of Defendants' violation of the Rhode Island Civil Rights Act, Lieberman was adversely affected in her employment, and did and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of Defendants' discriminatory conduct did and will continue to have a detrimental effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Lieberman alleges to be in the amount of Two Million Dollars ($2,000,000).

117. Defendants' conduct toward Lieberman constitute malicious, willful and wanton violations of the Rhode Island Civil Rights Act, so that in addition to the actual and prospective financial loss suffered by Lieberman, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

118. Lieberman, therefore, and in the alternative, seeks compensatory damages on this Sixth Cause of Action, including, among other things, the emotional harm inflicted upon her in the

21

sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS AND FOR A SEVENTH CAUSE OF ACTION, IN THE
ALTERNATIVE, AGAINST GOLDBERG INDIVIDUALLY FOR
AIDING AND ABETTING DISCRIMINATION IN VIOLATION OF
THE RHODE ISLAND FAIR EMPLOYMENT PRACTICES ACT**

119.    Lieberman repeats, realleges and incorporates in full paragraphs 1 through 118 of this Complaint, as though fully set forth at length herein.

120.    Should it be determined that Lieberman is not permitted to assert claims under the New York State Human Rights Law, Lieberman asserts her rights under the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws §§28-5-1 et seq.

121.    Should Goldberg be determined to not be individually liable under the Rhode Island Fair Employment Practices Act for any reason, then Goldberg should be held personally liable for aiding, abetting and compelling C.A. Goldberg's discrimination against Lieberman, as more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof.

122.    As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, Goldberg aided, abetted and compelled C.A. Goldberg's discrimination against Lieberman, so that, should Goldberg be deemed to have not been Lieberman's employer, Goldberg should be held personally liable for unlawful aiding and abetting against Lieberman in violation of §28-5-7(6) of the Rhode Island Fair Employment Practices Act, which states, *inter alia*:

> It shall be an unlawful employment practice . . . For any person, whether or not an employer, employment agency, labor

22

organization, or employee, to aid, abet, incite, compel, or coerce the
doing of any act declared by this section to be an unlawful
employment practice . . .

123.    Goldberg aided and abetted C.A. Goldberg to engage in the conduct complained of

and, as a direct result, Lieberman has and will continue to suffer, among other things, a significant

loss of income and benefits, emotional injuries, as well as other losses associated with the effects

of Defendants' conduct upon Lieberman's employment, career, and life's normal pursuits.

124.    As a direct and proximate result of Goldberg's conduct complained of herein,

Lieberman has suffered damages, injuries and losses, both actual and prospective, which include

financial loss, damage to her career and emotional pain and suffering, so that Lieberman seeks in

this Seventh Cause of Action compensatory damages in the amount of Two Million Dollars

($2,000,000).

125.    Defendants' conduct toward Lieberman constitute malicious, willful and wanton

violations of the Rhode Island Fair Employment Practices Act, so that in addition to the actual and

prospective financial loss suffered by Lieberman, Defendants should also be required to pay

punitive damages as punishment for their reprehensible conduct in the further amount of Three

Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such

conduct in the future.

126.    Lieberman, therefore, seeks compensatory damages on this Seventh Cause of

Action, including, among other things, the emotional harm inflicted upon her in the sum of Two

Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000)

Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of

Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

23

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff Lindsay Lieberman demands judgment against Defendants C.A. Goldberg, PLLC and Carrie A. Goldberg on the First Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); against Defendant Carrie A. Goldberg, in the alternative, on the Second Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); against Defendants C.A. Goldberg, PLLC and Carrie A. Goldberg on the Third Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); against Defendant Carrie A. Goldberg, in the alternative, on the Fourth Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000); and in the alternative, should New York law not apply, on the Fifth and Sixth Causes of Action against Defendants C.A. Goldberg, PLLC and Carrie A. Goldberg in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five Million Dollars ($5,000,000) for each Cause of Action; and against Defendant Carrie A. Goldberg, in the alternative, on the Seventh Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, for a total of Five

Million Dollars ($5,000,000); plus, on all Causes of Action, pre-judgment interest, the costs of this

action and reasonable attorney's fees, and for such relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By: _____

    BRIAN HELLER
    DAVIDA S. PERRY
    3 Park Avenue, Suite 2700
    New York, NY 10016
    (212) 889-6565