# SCHWARTZ PERRY HELLER LLP

3 PARK AVENUE, 27TH FL. NEW YORK, NY 10016
T: 212.889.6565 | F: 212.779.8208 | SPHLEGAL.COM

February 25, 2022

**Via ECF**

Judge Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    **Re:** **Lieberman v. C.A. Goldberg, PLLC, et al.**
       **1:21-cv-05053-ENV-RER**

Dear Judge Vitaliano:

  We represent the Plaintiff in the above-referenced action and write in response to Defendants' letter of February 18, 2022 requesting a pre-motion conference in advance of making a motion for summary judgment. While Defendants did not follow the Court's rule of limiting their request to three pages, Plaintiff will adhere to the Court's rules.

  This is a textbook case of pregnancy discrimination, where an employer is inconvenienced and frustrated by the hardship of a maternity leave and removes that woman under a concocted pretext of poor performance. The facts supporting the discrimination claim and Defendants' purported reason for terminating the Plaintiff are disputed and involve intent, so that summary judgment is inappropriate. Summary resolution is particularly inappropriate when this case is viewed under the broad outlines of the New York State and City Human Rights Laws, the only laws at issue.

  Plaintiff Lindsay Lieberman ("Lieberman") was hired in 2016 as a senior associate at Defendant C.A. Goldberg, PLLC ("C.A. Goldberg" or "the firm"), a Brooklyn-based law firm that represents victims of stalking, revenge porn and sexual assault and abuse. The firm is managed by its sole principal, Defendant Carrie A. Goldberg ("Goldberg"). Lieberman, a former Brooklyn Assistant District Attorney in the Special Victims Unit, was the firm's second hire and helped to build the firm. She consistently received praise for her work and neither the firm nor Goldberg provided her with negative feedback.

  In or around May 2019, Lieberman advised Goldberg that she was pregnant. Lieberman took maternity leave starting in October 2019 and returned in early March 2020. Although Goldberg had initially told Lieberman that the firm would offer paid parental leave, the firm did not.

After Goldberg learned of Lieberman's pregnancy in the Spring of 2019, Goldberg stopped paying Lieberman's quarterly bonus, which was part of the firm's compensation plan based on the number of hours each attorney billed. Defendants claim these bonuses were "discretionary," but Goldberg did not deny that these bonuses were an integral part of the attorneys' compensation.

Goldberg now characterizes its failure to pay Lieberman any bonus for 2019 as "planning" for the financial strain that Lieberman's upcoming maternity leave would cause, implicitly conceding that Lieberman's pregnancy negatively impacted her compensation.

Lieberman continued to speak with Goldberg about her bonus throughout 2019, and also sought an increase in salary, but Goldberg ignored her, which she had not done before Lieberman was pregnant.

Throughout 2020 and into 2021, Goldberg made a point of telling Lieberman and her colleagues that Lieberman's maternity leave was a hardship for the firm, and used that as an excuse to avoid paying Lieberman the bonus she had earned in 2019. In January 2020, while Lieberman was on maternity leave, Goldberg asked her when she was returning to work, adding that Lieberman's maternity leave "obviously affected the firm's finances." Lieberman returned to work in early March 2020, as planned.

In June 2020, after she was back at work for three months, Lieberman followed up with Goldberg about her long overdue 2019 bonus. Goldberg again raised Lieberman's maternity leave as a reason not to pay Lieberman monies she had earned the prior year. Despite her clear animosity, Goldberg acknowledged Lieberman's contribution, writing in this same email, "Again, you are valuable to the firm. And you deserve every penny you're asking for and more."

Defendants' claim that two attorneys were out on parental leave is a transparent effort to garner sympathy, but conveniently omits that the other attorney, Adam Massey, a man, only took one month off. It was Lieberman, the firm's top-billing attorney who had taken four months of maternity leave, who truly bore the brunt of Goldberg's animosity, even though Goldberg could have paid the bonuses Lieberman was due.

Lieberman continued to work hard, despite the fact that Goldberg was refusing to honor her commitment to Lieberman. Goldberg, in turn, continued to silently simmer in anger over Lieberman's requests for compensation. Goldberg's entire view of Lieberman changed, as Lieberman went from being a core member of the team to a greedy "terrorist" who Goldberg viewed as a "creditor," as Goldberg wrote in her contemporaneous correspondence.

In September 2020, Lieberman once more approached Goldberg about her 2019 bonus. Goldberg again blamed the firm's allegedly poor finances on Lieberman's maternity leave, a transparent attempt to guilt Lieberman into forgoing money that she earned. Goldberg, nevertheless, told Lieberman that she was "worth every cent" and that she would start to pay the bonus out over several years.

# SCHWARTZ PERRY & HELLER LLP

Goldberg's hostility only increased. In a "state of the union" speech Goldberg gave to the entire firm in early January 2021, Goldberg listed the "setbacks" that the firm "suffered" in 2020. Goldberg identified "the pandemic, the death of a client and two parental leaves," equating Lieberman's leave with two tragedies. Goldberg also omitted Lieberman from her "thank yous" during the state of the union and ignored all of Lieberman's accomplishments in 2020. This was humiliating to Lieberman and Lieberman's colleagues similarly noted Goldberg's hostile reference to Lieberman's pregnancy in their contemporaneous text message exchanges.

Lieberman, however, continued to succeed in her work and billed more than any other attorney in early 2021. In February 2021, Lieberman reached out to Goldberg to discuss her bonus for 2019, which was then two years past due and did not even include the bonus that Lieberman had earned in 2020. A meeting was set for March 5, 2021.

At the meeting on March 5, 2021, Goldberg terminated Lieberman, claiming that her "work had been suffering," a shocking accusation that had no basis in reality. Lieberman was really terminated because Goldberg was furious that Lieberman had caused a financial hardship by taking maternity leave, and then had the audacity to still ask for the bonuses she earned.

Revealingly, Defendants not that Lieberman's performance issues started in March 2020, which is right after Lieberman returned from maternity leave. Also revealing is the fact that Goldberg never issued Lieberman a negative performance evaluation or even spoke to Lieberman about her alleged performance issues. Defendants blame Lieberman for complaints from clients, but omit that many of the firm's clients, victims who are seeking justice, often complain regarding billing. In fact, Goldberg had frequently told Lieberman that she assigned Lieberman the most difficult clients because she knew Lieberman could handle them. A jury could reject Defendants' claims of poor performance as a pretext for pregnancy discrimination.

It is entirely improper for Defendants to seek summary judgment on their counterclaims for faithless servant. Plaintiff requested a pre-motion conference to move to dismiss that counterclaim in a letter submitted to the Court on December 23, 2021. Defendants added the counterclaim long after the deadline to amend the Answer expired and without leave of Court. Even if the counterclaim was considered on the merits, it is black letter law that the one email that Plaintiff sent to a prospect, which did not lead to any work performed or income earned by Plaintiff, is insufficient to sustain a faithless servant claim. Defendants' audacity in believing that no jury could possibly disagree with them is not a legitimate basis for summary judgment on that obviously retaliatory counterclaim. Should Defendants be permitted to assert that counterclaim, Plaintiff should be granted leave to amend her Complaint to assert a cause of action for retaliation.

We thank the Court for its consideration of this matter.

Respectfully,

BRIAN HELLER

cc: All counsel – via ECF