UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
LINDSAY LIEBERMAN

                              *Plaintiff*,

   -against-

C.A. GOLDBERG, PLLC & CARRIE A. GOLDBERG,

                            *Defendants*.
-----------------------------------------------------------------------X

1:21-cv-05053-ENV-RER

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*
**3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565**

# TABLE OF CONTENTS

| SUBJECT | PAGE |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 2 |
| STANDARD OF REVIEW | 5 |
| ARGUMENT | |
|   POINT I    DEFENDANTS FAILED TO SEEK LEAVE TO SERVE AN AMENDED ANSWER | 6 |
|   POINT II    DEFENDANT C.A. GOLDBERG FAILS TO STATE A CAUSE OF ACTION UNDER THE FAITHLESS SERVANT DOCTRINE | 6 |
|     A.    The High Bar For A Faithless Servant Claim | 7 |
|     B.    Lieberman Was Not A Faithless Servant | 8 |
|   POINT III    DEFENDANT C.A. GOLDBERG CANNOT ASSERT A CLAIM PURSUANT TO ITS HANDBOOK | 15 |
| CONCLUSION | 16 |

# TABLE OF AUTHORITIES

**CASE**                                                        **PAGE**

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)                                5

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)                                5

Carco Grp., Inc. v. Maconachy,
    383 Fed. Appx. 73 (2d Cir. 2010)                   11

Dane v. UnitedHealthcare Ins. Co.,
    974 F.3d 183 (2d Cir. 2020)                         5

DiFolco v. MSNBC Cable L.L.C.,
    622 F.3d 104 (2d Cir. 2010)                         15

Doe v. Solera Capital LLC,
    2019 U.S. Dist. LEXIS 55860 (S.D.N.Y. Mar. 31, 2019)     10

Dubov v. Lewis,
    2019 U.S. Dist. LEXIS 36305 (S.D.N.Y. Mar. 6, 2019)      5

Ebel v. G/O Media, Inc.,
    2021 U.S. Dist. LEXIS 96922 (S.D.N.Y. May 21, 2021)     7, 13

Feiger v. Iral Jewelry, Ltd.,
    41 N.Y.2d 928 (1977)                              12

Grewal v. Cuneo,
    2016 U.S. Dist. LEXIS 8349 (S.D.N.Y. Jan. 25, 2016)      10, 12

Island Sports Physical Therapy v. Kane,
    84 A.D.3d 879 (2d Dept. 2011)                     11

Leary v. Fawaz Al-Mubaraki,
    2019 U.S. Dist. LEXIS 170117 (S.D.N.Y. Sep. 30, 2019)    12, 13, 15

Lobosco v. N.Y. Tel. Company/NYNEX,
    96 N.Y.2d 312 (2001)                              15

Miller v. Levi & Korsinsky, LLP,
    2021 U.S. Dist. LEXIS 27448 (S.D.N.Y. Feb. 12, 2021)     7, 9, 11-12

Morgan Stanley v. Skowron,
	989 F. Supp. 2d 356 (S.D.N.Y. 2013)	11

Nielsen v. Rabin,
	746 F.3d 58 (2d Cir. 2014)	5

Phansalkar v. Andersen Weinroth & Co., L.P.,
	344 F.3d 184 (2d Cir. 2003)	1, 7, 9, 10, 13

Sanders v. Madison Square Garden, L.P.,
	2007 U.S. Dist. LEXIS 48126 (S.D.N.Y. July 2, 2007)	7, 8, 13

Schneider Leasing Plus v. Stallone,
	172 A.D.2d 739 (2d Dept. 1991)	11

Schwartz v. Leonard,
	138 A.D.2d 692 (2d Dept. 1988)	13

Shamrock Power Sales, LLC v. Scherer,
	2015 U.S. Dist. LEXIS 133650 (S.D.N.Y. Sep. 30, 2015)	11

Stefanovic v. Old Heidelberg Corp.,
	2019 U.S. Dist. LEXIS 133397 (S.D.N.Y. Aug. 8, 2019)	8, 11, 14

Turner v. Konwenhoven,
	100 N.Y. 115 (1885)	7

Yukos Capital S.A.R.L. v. Feldman,
	977 F.3d 216 (2d Cir. 2020)	10

# PRELIMINARY STATEMENT

Plaintiff Lindsay Lieberman ("Lieberman") brought this pregnancy discrimination case under the New York State and City Human Rights Laws against her former employers, Defendants C.A. Goldberg, PLLC ("C.A. Goldberg") and Carrie A. Goldberg ("Goldberg"), pursuant to diversity jurisdiction. As set forth in the Complaint,[1] Plaintiff was repeatedly told that she was not receiving a bonus because she took maternity leave and was ultimately terminated on March 5, 2021.

During discovery, Defendants – without leave – served an Amended Answer and C.A. Goldberg added a Counterclaim[2] alleging that Lieberman was a "faithless servant." Specifically, C.A. Goldberg alleges that Lieberman was disloyal because she exchanged two emails and had one phone call with a former employer about providing "legal counseling." (Counterclaim ¶¶10, 11). Even though it is undisputed that Lieberman did not actually perform any work for anyone during her employment with Defendants, C.A. Goldberg argues that Lieberman was a faithless servant because she was "willing to engage in outside employment." (Counterclaim ¶10).

C.A. Goldberg's Counterclaim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. As set forth herein, C.A. Goldberg woefully fails to meet the high burden of showing that Lieberman "substantially violated" her duty to her employer. Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 201 (2d Cir. 2003). The Counterclaim is a baseless and transparent effort to retaliate against Lieberman for bringing this lawsuit and to intimidate her into silence. We most respectfully urge the Court not to permit such a tactic.

---

[1] A copy of the Complaint is attached to the accompanying Declaration of Brian Heller, Esq., as Exhibit A.
[2] A copy of the Amended Answer and Counterclaim is attached to the accompanying Declaration of Brian Heller, Esq., as Exhibit B.

## STATEMENT OF FACTS

Lieberman began working as a Senior Associate attorney at C.A. Goldberg in or around August 2016. (Complaint ¶8). C.A. Goldberg, which Goldberg founded in 2014, represents victims of stalking, sexual assault and online harassment.

Lieberman received positive feedback throughout her employment and earned bonuses based on C.A. Goldberg's bonus structure. (Complaint ¶¶11, 13). In or around May 2019, Lieberman informed Goldberg that she was pregnant with her first child. (¶19). Thereafter, Goldberg stopped paying Lieberman the bonuses she had earned and repeatedly refused to discuss the topic with Lieberman, despite Lieberman's attempts. (Complaint ¶¶19, 22, 25, 26).

Lieberman began her maternity leave in October 2019. (Complaint ¶24). In January 2020, while Lieberman was still on maternity leave, Goldberg and Lieberman had a telephone call during which Goldberg told Lieberman that her maternity leave "obviously affected the firm's finances." Goldberg then told Lieberman that she could not pay Lieberman her 2019 bonus because Lieberman had taken maternity leave and another male employee had taken four weeks of parental leave. (Complaint ¶¶28, 31).

Lieberman returned to work in early March 2020. (Complaint ¶33). On June 21, 2020, Lieberman again emailed Goldberg and renewed her request for the 2019 bonus she had earned, to which Goldberg responded:

> Having two of my 4 1/2 attorneys (counting A[] is ½ b/c she's still not been admitted and requires an attorney on all matters involving legal advice) out on pregnancy leave for the last months of 2019 and into 2020 was one recent variable impacting the firm's finances…
> (Complaint ¶¶35-36).

Goldberg again raised Lieberman's maternity leave as a reason for why she would not receive her full bonus during a conversation in September 2020, though Goldberg agreed that

Lieberman was "worth every cent" and that she would start to pay the bonus in installments. (Complaint ¶¶39-40).

Goldberg again demeaned Lieberman for taking maternity leave during a "state of the union" speech in early January 2021, when Goldberg listed "two parental leaves" as a "setback" that the firm "suffered" in 2020, on par with the pandemic and the death of a client, and Goldberg refused to highlight any of Lieberman's accomplishments while praising other staff members. (Complaint ¶41-42, 46).

Lieberman continued to seek the remainder of the 2019 bonus that was owed to her, which was now almost two years overdue. (Complaint ¶53). Goldberg finally scheduled a call with Lieberman for March 5, 2021. Goldberg terminated Lieberman's employment on that call. (Complaint ¶¶54, 55). Goldberg's explanation was that Lieberman's "work had been suffering," yet Goldberg had never criticized Lieberman's work and, to the contrary, had only provided positive feedback, including in the weeks leading up to her termination. (Complaint ¶¶56, 57, 59). Goldberg acknowledged at her deposition that Lieberman was "shocked" and "surprised" by being terminated. (Goldberg 247).[3]

Lieberman commenced this lawsuit on September 10, 2021 (docket #1). Defendants served their Answer on September 14, 2021 (docket #9).

On December 7, 2021, Defendants' amended their Answer without leave and Defendant C.A. Goldberg added a Counterclaim alleging that Lieberman was a "faithless servant" during her employment. Defendants rely primarily on communications between Lieberman and her career coach discussing Lieberman "approaching" her previous employer, a sorority, about "career opportunities to provide legal counseling." (Counterclaim ¶7). The "opportunities" allegedly

---

[3] A copy of the relevant pages of Goldberg's deposition transcript are attached to the accompanying Declaration of Brian Heller, Esq., as Exhibit C.

3

involved "providing legal consultations and doing legal work" (Counterclaim ¶9) for the sorority in the area of Title IX.

C. A. Goldberg had never before represented or consulted with a sorority. Goldberg could not recall sending any marketing materials to any sororities between 2017 and 2021. (Goldberg 47). The one written document that the firm relies upon is a blog written "several years ago that was sort of a listicle for what sororities should do if one of their sisters tells them they have been sexually assaulted." (Goldberg 36).

The reality is the firm's "experience and expertise in Title IX" work (Counterclaim ¶12) involved representing individuals *against* universities and greek organizations, not consulting with those organizations. (Goldberg 43: "We took cases against fraternities or fraternity members").

Defendants rely on two communications Lieberman had with the sorority: one on December 2, 2020 and the second on January 25, 2021. (Counterclaim ¶¶10, 11). The December 2020 communication involved Lieberman telling the former sorority that she would be "happy to help," which Defendants interpret to mean that Lieberman was "communicating that she would be willing to engage in outside employment." (Counterclaim ¶10). Lieberman did not perform any work for the sorority in 2020 and the Counterclaim does not allege that she did.

The January interaction with the sorority involved a 30-minute call where Lieberman "heard what their issues were" and "gave the sorority some thoughts off the top of her head." (Counterclaim ¶¶11, 13). The Counterclaim characterizes this 30-minute call, for which Lieberman did not receive any compensation, as "outside employment." (Counterclaim ¶13). C.A. Goldberg alleges, in the Counterclaim, that after the call, Lieberman "sent a formal proposal" to the sorority in February 2021, indicating that she would take on the work as an independent contractor so that

the sorority "wouldn't have to go through the law firm and the steep pricing that accompanies it." (¶14).

It is undisputed that the sorority did not actually engage Lieberman to perform any services until after she was terminated by Defendants. (Counterclaim ¶22). Goldberg testified that before she fired Lieberman, she never thought that Lieberman was working for anybody else outside the firm. (Goldberg 50). C.A. Goldberg argues that because Lieberman was "cultivating" a relationship with the sorority during her employment, then then firm is entitled to "a stake" in any income that Lieberman received from being engaged by the sorority after her termination. (Goldberg 36-37).

## STANDARD OF REVIEW

A pleading can only survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (recognizing that a complaint may be dismissed if it does not state a claim that is "plausible on its face."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188-89 (2d Cir. 2020) (citing Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014)). A motion to dismiss a counterclaim adheres to the same standard as a motion to dismiss a complaint. See Dubov v. Lewis, 2019 U.S. Dist. LEXIS 36305, at *5 (S.D.N.Y. Mar. 6, 2019).

# ARGUMENT

## POINT I

### DEFENDANTS FAILED TO SEEK LEAVE TO SERVE AN AMENDED ANSWER

Defendants improperly filed an amended pleading without leave of Court. Defendants adhered to the deadline of December 7, 2021 in the October 4, 2021 Case Management Plan ("CMP") (DKT #12). However, Defendants objected to the CMP and it was not filed jointly. On October 7, 2021, Magistrate Reyes submitted a minute entry that set deadlines for discovery but did not include a date for amended pleadings or adopt the proposed CMP. In fact, the minute entry specifically states, "The CASE MANAGEMENT STATEMENT [12] is not entered." (Emphasis in original). Defendants were only permitted to amend as of right either: (1) within 15 days of serving their Answer on September 14, 2021, pursuant to FRCP 15(a)(1)(a); or with Plaintiff's consent or the Court's leave pursuant to FRCP 15(a)(2), neither of which Defendant obtained.

Accordingly, Defendants' amendment should be rejected as untimely. Nevertheless, even assuming that Defendants had leave to file an Amended Answer, which they did not, the Counterclaim should be dismissed pursuant to FCRP 12(b)(6) for failure to state a claim upon which relief can be granted.

## POINT II

### DEFENDANT C.A. GOLDBERG FAILS TO STATE A CAUSE OF ACTION UNDER THE FAITHLESS SERVANT DOCTRINE

C.A. Goldberg's allegations in the Counterclaim – which boil down to a claim that Lieberman was "willing" to engage in outside employment (¶10) – are insufficient to state a claim under New York State's strict standard for a faithless servant claim.

## A. The High Bar For A Faithless Servant Claim

"Under New York law, an agent is obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003) (citations omitted). Under what has been deemed the "faithless servant" doctrine, an employee "who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." Id.

There is a high bar to establish a claim under the faithless servant doctrine. As the court recognized in Sanders v. Madison Square Garden, L.P., 2007 U.S. Dist. LEXIS 48126, at *19-20 (S.D.N.Y. July 2, 2007), "The remedies of the faithless servant doctrine are drastic, and appropriately so where the doctrine applies. An employee who violates an incidental work rule … need not forfeit her entire salary." Cited by Ebel v. G/O Media, Inc., 2021 U.S. Dist. LEXIS 96922, at *17 (S.D.N.Y. May 21, 2021) (recognizing that "it is important to ensure that this doctrine does 'not stretch so far,' given its severe penalty: forfeiture of an employee's entire salary during the period of faithlessness.").

The Second Circuit has clarified that an employer may only assert a claim under the faithless servant doctrine when the employee "substantially violates" the duty to the employer. Phansalkar, 344 F.3d at 201 (citing Turner v. Konwenhoven, 100 N.Y. 115, 120 (1885). An act of disloyalty is not substantial "where the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior." Id. at 201-02; see also Miller v. Levi & Korsinsky, LLP, 2021 U.S. Dist. LEXIS 27448, at *13 (S.D.N.Y. Feb. 12, 2021), (recognizing that "courts have found disloyalty not to be 'substantial' where the behavior consisted of a single act of disloyalty, as opposed to a persistent pattern"); Sanders, 2007 U.S. Dist. LEXIS 48126, at *18 (holding that "the

7

alleged misconduct here is so far removed from [plaintiff's] job responsibilities that it cannot be said that the misconduct 'substantially' interfered with her job performance."); see, e.g. Stefanovic v. Old Heidelberg Corp., 2019 U.S. Dist. LEXIS 133397, at *8 (S.D.N.Y. Aug. 8, 2019) (noting that "courts in this Circuit have held a faithless servant claim requires showing that the employee breached their duty of loyalty to their employer in a way that was substantial and material to the performance of their duties.").

**B.     Lieberman Was Not A Faithless Servant**

C.A. Goldberg has failed to satisfy the high bar required for establishing a faithless servant claim. Specifically, C.A. Goldberg relies on four events, none of which rise to the level of "substantial" disloyalty or competition with C.A. Goldberg.

First, C.A. Goldberg cites a conversation that Lieberman had with her career coach on July 28, 2020 about "career opportunities." (¶7). Obviously, Lieberman's private conversation with her career coach about career opportunities cannot possibly be deemed substantial disloyalty. Lieberman, like all at-will employees, had a right to consider her career opportunities and discuss them with her coach without fear of being sued.

Second, C.A. Goldberg claims that, on December 2, 2020, Lieberman *responded to* an email from the sorority expressing that she would be "happy to help" (¶¶9-10), which C.A. Goldberg interprets as Lieberman being "willing" to engage in outside employment. (¶10).

Third, C.A. Goldberg claims that, almost two months later, on January 25, 2021, Lieberman *received* an email from the sorority and then held a 30-minute phone call with the sorority. (¶¶11, 13). Again, C.A. Goldberg fails to present any support for its belief that Lieberman merely speaking on the phone about a possible engagement rises to the level of a "substantial" act of disloyalty that would support a faithless servant claim.

8

Finally, C.A. Goldberg alleges that Lieberman sent a "formal proposal" to the sorority in February 2021 from her personal email (¶14), though Lieberman was not actually engaged by the sorority until after she was terminated on March 5, 2021. (¶22). This one preliminary email – which did not result in Lieberman being retained or performing any competing work during her employment – is insufficient to establish "substantial" disloyalty to support a cause of action under the faithless servant doctrine. See Phansalkar, 344 F.3d at 201.

The court's decision in Miller v. Levi & Korsinsky, LLP, 2021 U.S. Dist. LEXIS 27448 (S.D.N.Y. Feb. 12, 2021), demonstrates why C.A. Goldberg's Counterclaim must fail. In Miller, the plaintiff asserted claims of gender discrimination and her former employer, a law firm, asserted counterclaims. The law firm alleged that the plaintiff had been disloyal by negotiating the allocation of attorney's fees with another firm in a manner that was "materially detrimental" to her employer because she viewed the other firm as a possible employer, and the employee "later boasted about her unauthorized conduct." Id. at 7. The employer also alleged that the plaintiff made "disparaging remarks" to the general counsel of one of the firms' clients and that client soon terminated the employer and retained a law firm that was closely connected to plaintiff. Id.

The court dismissed the counterclaims under FRCP 12(b)(6), holding that "the two instances that L&K alleges are not severe enough to warrant relief under the faithless servant doctrine." Id. at 17. The court noted that the conduct alleged "cannot be said to violate the 'substantial misconduct' or 'adverse action' standards warranting forfeiture" and was "vastly different from other instances of self-dealing to which courts have applied the faithless servant doctrine." Id. at 18.

If the conduct alleged in Miller – negotiating unfavorable terms and causing the departure of a client – did not give rise to a faithless servant claim, then C.A. Goldberg's meager allegations

9

that Lieberman had a handful of preliminary discussions with her former employer that never came to fruition certainly does not give rise to such a claim. As the court cautioned in Ebel, 2021 U.S. Dist. LEXIS 96922, at *17 – a case where Defendants' counsel in this case obtained dismissal of a faithless servant counterclaim – "it is important to ensure that this doctrine does 'not stretch so far,' given its severe penalty." See also Yukos Capital S.A.R.L. v. Feldman, 977 F.3d 216, 239 (2d Cir. 2020) (holding, where the company alleged that the employee improperly secured a $2.6 million kickback, "Reasonable minds could disagree about whether the [employee's kickback scheme] was a 'substantial and material' violation of the duty of loyalty as a matter of law."); Doe v. Solera Capital LLC, 2019 U.S. Dist. LEXIS 55860, at *27-28 (S.D.N.Y. Mar. 31, 2019) (granting 12(b)(6) dismissal of a faithless servant counterclaim where the employee improperly used her employer's credit card to charge $224.20, which the court found to be "garden-variety, petty pilfering by an employee" that does not rise to the level of "a 'persistent pattern of disloyalty' that courts have found necessary to bring conduct within the confines of the doctrine."); Grewal v. Cuneo, 2016 U.S. Dist. LEXIS 8349, at *25 (S.D.N.Y. Jan. 25, 2016) (dismissing counterclaims based on breach of fiduciary duty and duty of loyalty where the employer did not allege any facts showing that the plaintiff "took a material step to steal the firm's clients").

The cases where a faithless servant claim has been sustained show just how high of a bar exists, and how woefully the Counterclaim fails to meet it. In Phansalkar, 344 F.3d at 202-203, for example, the Second Circuit found a faithless servant cause of action where the plaintiff's "disloyalty was *not* limited to a single, isolated incident, but rather occurred repeatedly, in nearly every transaction on which he worked," and he failed to disclose "six different interests or opportunities that he received as a representative of [his employer]." (Emphasis in original). Here, by contrast, Lieberman's one telephone call and two emails with the sorority regarding an

opportunity that was at best tangential to C.A. Goldberg's practice do not rise to the level of being actionable. See also Carco Grp., Inc. v. Maconachy, 383 Fed. Appx. 73, 77 (2d Cir. 2010) (sustaining a faithless servant claim where the employee kept a family member on payroll against his superior's orders); Stefanovic, 2019 U.S. Dist. LEXIS 133397, at *9 (allowing a faithless servant claim to proceed where employees were accused of "changing the gratuity amount on customer receipts to give themselves a higher tip."); Shamrock Power Sales, LLC v. Scherer, 2015 U.S. Dist. LEXIS 133650, at *82-83 (S.D.N.Y. Sep. 30, 2015) (finding a faithless servant claim where the plaintiff "was actively competing against Shamrock while employed by it and stole confidential and proprietary information from Shamrock, where Scherer was aware of the value of this confidential information to Shamrock."); Morgan Stanley v. Skowron, 989 F. Supp. 2d 356, 361-362 (S.D.N.Y. 2013) (finding an employee who pled guilty to criminal charges of insider trading to be a faithless servant since "[i]nsider trading is the ultimate abuse of a portfolio manager's position" and the employee "admittedly lied and covered up his involvement for years afterwards.").

Even if Lieberman had been considering creating a competing business before her termination – which she was not – such efforts would not be actionable as a faithless servant claim. As the Second Department noted in Island Sports Physical Therapy v. Kane, 84 A.D.3d 879, 880 (2d Dept. 2011), "An employee may create a competing business prior to leaving her or his employer without breaching any fiduciary duty unless she or he makes improper use of the employer's time, facilities or proprietary secrets in doing so." Citing Schneider Leasing Plus v. Stallone, 172 A.D.2d 739, 741 (2d Dept. 1991); see also Miller, 2021 U.S. Dist. LEXIS 27448, at *17 ("The remedies of the faithless servant doctrine are drastic, and appropriately so where the doctrine applies. An employee who violates an incidental work rule, however, . . . need not forfeit

her entire salary."); Grewal, 2016 U.S. Dist. LEXIS 8349, at *25 ("New York courts, however, have found that the taking of 'preliminary steps to enter into a competitive business involved no breach of fidelity so long as . . . Plaintiff never lessened his work on behalf of defendant and never misappropriated to his own use business secrets.'") (citing Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 929 (1977)).

The reality is that the proposed services that Lieberman would perform for the sorority, namely consulting on their policies, were vastly different than C.A Goldberg's practice, which represents victims of revenge porn, stalking and sexual harassment. The firm's "experience and expertise in Title IX" work (Counterclaim ¶12) involved representing individuals *against* universities and fraternities (Goldberg 43), not consulting with those organizations. C. A. Goldberg had not sent any marketing materials to any sororities. Its sole marketing effort was a blog written years earlier that Goldberg described as "sort of a listicle for what sororities should do if one of their sisters tells them they have been sexually assaulted." (Goldberg 36, 47). The Counterclaim is premised on a speculative belief that perhaps the sorority might have engaged the firm, even though it is reasonable to believe that the firm would have turned down the work. It was only *after* Lieberman was fired that she began consulting with non-profit organizations regarding risk management for sexual misconduct matters, which is not in competition with C.A. Goldberg, so that Lieberman *never* negatively affected Defendants' interests. See Leary v. Fawaz Al-Mubaraki, 2019 U.S. Dist. LEXIS 170117, at *11-12 (S.D.N.Y. Sep. 30, 2019) ("Without allegations demonstrating that Mr. Leary engaged in self-interested conduct that negatively affected Wafra's interests, Wafra's counterclaims for breach of fiduciary duty fail to state claims upon which relief may be granted and must be dismissed.").

C.A. Goldberg also fails to demonstrate "substantial" disloyalty because there is no allegation in the Counterclaim that Plaintiff's job performance decreased. In fact, Lieberman had more billable hours than any of her colleagues during the time she was purportedly "faithless" and she received positive feedback on her work (Complaint ¶52), so that Defendants always received Lieberman's best efforts, a fact that cannot reasonably be disputed. See Ebel, 2021 U.S. Dist. LEXIS 96922, at *12-13 (S.D.N.Y. May 21, 2021) (recognizing that a faithless servant claim requires that "(1) that the employee's disloyal activity was related to the performance of his duties, and (2) that the disloyalty permeated the employee's service in its most material and substantial part."); Leary, 2019 U.S. Dist. LEXIS 170117, at *12 (granting dismissal and noting that the employer "has not specifically alleged how Plaintiff's alleged disloyalty substantially affected his job performance."); Sanders, 2007 U.S. Dist. LEXIS 48126, at *12 (S.D.N.Y. July 2, 2007) ("However, neither operating an outside business nor unethical conduct unrelated to employment violates the faithless servant doctrine unless such business or behavior adversely affects the employee's job performance…MSG neither claims nor has provided any evidence that Browne Sanders's alleged misconduct hurt her job performance."); Schwartz v. Leonard, 138 A.D.2d 692, 693 (2d Dept. 1988) (holding that a lawyer removing files from his employer's office and secretly starting his own law practice "was a single act and not a persistent pattern of disloyalty" and that "there was insufficient evidence to show that the defendant . . . was furthering his own interest at the expense of the plaintiff.") (cited By Phansalkar, 344 F.3d at 202 n.12)).

C.A. Goldberg does not allege that Lieberman relied upon any of C.A. Goldberg's confidential information or misrepresented herself as working on behalf of the firm. To the contrary, C.A. Goldberg acknowledges that Lieberman's contact with the sorority was on her "personal email" and that she represented herself to be "an independent contractor." (¶14). While

13

a faithless servant claim does not necessarily require a showing of damages, C.A. Goldberg's inability to reference any damages confirms that the Counterclaim is a pretext to retaliate against Lieberman for asserting her rights.

The Counterclaim contains a vague allegation that "this is not the only instance in which Lieberman has engaged in outside employment without notifying C.A. Goldberg." (Counterclaim ¶18). C.A. Goldberg's speculation has no basis. Plaintiff did not engage in any outside work *ever* during her employment and C.A. Goldberg presents no evidence in support of its conclusory contention. See Stefanovic, 2019 U.S. Dist. LEXIS 133397, at *10 (dismissing a counterclaim that employees "routinely engaged" in competitive behavior as "conclusory" and "not entitled to the assumption of truth for the purposes of this motion to dismiss.").

One allegation in the Counterclaim that is particularly concerning is C.A. Goldberg's assertion that "Lieberman did not bring this opportunity [with the sorority] to C.A. Goldberg's attention" (¶12), as if Lieberman had an obligation to do so. The law does not require employees to inform their employers of each opportunity of which they become aware. C.A. Goldberg's contention that the law requires that employees inform their employers of any possible opportunity they find – and permit a cause of action against an employee if he/she/they do not – would fundamentally re-order the employment relationship and grant employers even more authority over their employees.

Defendants ask this Court to set a dangerous precedent. Permitting C.A. Goldberg to sue its former employee for being "willing to engage in outside employment" (¶10) would lower the bar for a counterclaim so drastically that any employee who begins to contemplate a career after leaving an employer would subject themselves to liability. This threat of a counterclaim would be particularly devastating to victims of employment discrimination, who would either be retaliated

against with a counterclaim or chilled from even asserting a claim by the threat of such a counterclaim, merely because other opportunities were explored. The Court should not allow such a drastic re-ordering of the employment at will standard.

## POINT III

### DEFENDANT C.A. GOLDBERG CANNOT ASSERT A CLAIM PURSUANT TO ITS HANDBOOK

To the extent that C.A. Goldberg alleges there was a "breach of contract" by citing its 2018 employee handbook (Counterclaim ¶27), that claim must fail as a matter of law. The Employee Handbook (pg. 7, bates CAG24), relevant portions of which are attached as Exhibit D,[4] specifically provides that it is not a contract, stating, "The language used in the Personnel Policies and Procedures and/or in this Handbook is not intended nor should be construed to constitute a contract, express or implied, between CAG and its' employees." Accordingly, any breach of contract claim premised on the handbook must be dismissed. See also Leary, 2019 U.S. Dist. LEXIS 170117, at *15 ("The New York Court of Appeals has held that 'employee manuals, handbooks and policy statements' containing contract disclaimers are not 'binding employment agreements' because the 'disclaimer prevents the creation of a contract.'") (quoting Lobosco v. N.Y. Tel. Company/NYNEX, 96 N.Y.2d 312, 317 (2001)); Sanders, 2007 U.S. Dist. LEXIS 48126, at *13 ("Even assuming arguendo that plaintiff had such a contractual responsibility, defendant's argument does not entail the conclusion that Browne Sanders had a fiduciary responsibility to MSG to comply with every provision of the Agreement.").

---

[4] The Court may appropriately consider the handbook on a Rule 12(b)(6) motion to dismiss because the Counterclaims specifically refer to it. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

15

## CONCLUSION

For the foregoing reasons, Lieberman respectfully requests that C.A. Goldberg's Counterclaim be dismissed with prejudice, that Lieberman be permitted to seek leave to amend her Complaint to assert a claim of retaliation based on Defendants' baseless Counterclaims, and for such further relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By:_____
BRIAN HELLER
DAVIDA S. PERRY
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565
