**EXHIBIT 13**

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| LINDSAY LIEBERMAN, | Case No. 21-CV-05053 |
| Plaintiff, | |
| -against- | |
| C.A. GOLDBERG, PLLC & CARRIE A. GOLDBERG, | DECLARATION OF MARC J. RANDAZZA |
| Defendants. | |
| C.A. GOLDBERG, PLLC, | |
| Counterclaim Plaintiff, | |
| -against- | |
| LINDSAY LIEBERMAN, | |
| Counterclaim Defendant. | |

STATE OF NEW YORK )
) ss.:
COUNTY OF KINGS )

I, Marc Randazza, declare, under penalties of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am an attorney who has worked as co-counsel with C. A. Goldberg PLLC ("the Firm") on several matters.

2. In July 2020, I entered into a co-counsel agreement with the Firm regarding a litigation matter in Rhode Island. Unlike me, Attorney Lindsay Lieberman, who was employed by the Firm at the time, was admitted to practice in the state; thus, role was not merely to serve as a pro hac vice sponsor, but to actually interact with the client as co-counsel.

3. Overall, I was disappointed with Lieberman's work. Her performance fell below my expectations for an attorney at the Firm, which I believe otherwise has a very good reputation for competent and aggressive legal representation.

1

4.  I found Lieberman's work product to be poor quality and her analysis to be lacking and unsophisticated. The majority of the time that I asked her questions about the local rules or local practices, she did not know the answers. However, what concerned me even more was that she did not seem to be concerned about her lack of knowledge.

5.  In July 2020, when Lieberman was first handed the file, she told the client that she was was not ready to communicate with him/her because she was in the process of trying to figure out "administrative stuff." She never defined what that "administrative stuff" was.

6.  After a month, in August 2020, I began getting increasingly concerned messages from the client. Lieberman's inattentiveness to the client had become somewhat of a crisis in the representation. Her excuse remained that she was trying to figure out "administrative stuff." To this day, I do not know what "administrative stuff" means.

7.  In my opinion, Lieberman failed to actively litigate the case. I would describe her participation as "mailing it in," which conflicted with the aggressive litigation strategy the Firm and I had agreed to pursue.

8.  By August of 2020, after working with her for a month, I had a very dim view of Lieberman's abilities, drive, ambition, and competence. I became concerned about pairing with the Goldberg Firm on future cases. At no point thereafter did she do anything to rehabilitate my view of the Firm.

9.  I did not complain to Carrie Goldberg at that time, as I simply resolved to finish out the case as I had agreed. The next time I needed co-counsel for a revenge porn case, I intended to simply call a different firm. As this was the first time Goldberg and I had collaborated on a case, despite previously discussing our own cases with each other, it was a very bad first impression – something that usually is hard to get a second chance on.

10. When Goldberg informed me that she was terminating Lieberman's employment, I informed her of my dissatisfaction with the working relationship, and that I had a very negative view of Lieberman's competence and work ethic. I apologized to Goldberg for not saying something sooner.

11. I was shocked that, with Lieberman's departure from the Firm, she immediately ceased all work on the matter, effective immediately. It was a completely unethical abdication of her duties to the client.

12. I presumed that she would be starting her own solo practice or going elsewhere, and would continue to discharge her duties to the client. She could then have continued work on the matter and been entitled to her own portion of the contingency fee. I hoped that her work quality would improve, thinking perhaps she was overworked or otherwise stressed at the Firm, but if otherwise, we could at least simply have her serve as a local counsel, and the substantive work could be done by another attorney.

13. Lieberman's actions left the client completely in the lurch, and we were forced to act swiftly and find a Rhode Island barred attorney to replace her as local counsel.

14. Whatever breakdown had occurred in the relationship between Lieberman and the Firm, I was stunned that Lieberman simply abandoned the case, the client, and me – who had never so much as had a tense word with her – in violation of the rules of professional responsibility, which are clear that an attorney should not withdraw from a case without regard for the client's interests.

15. It seemed to me that Lieberman was acting spitefully toward her former employer, at the expense of her client.

16. I, myself, have changed firms twice in the past – and I have withdrawn from representation numerous times. Even in cases where the client has overtly given me cause to terminate the

relationship, such as failing to make payments or failing to communicate, and even when I have had a client act very negatively toward me, I litigate a case as if I am taking it to trial up until the moment I am relieved of duty in the case. I do not say this to somehow hold myself up as a paragon of ethics in this regard – this is what all lawyers are expected to do. The client's interests come before any dispute with your firm, your client, or anyone else. Lieberman completely disregarded this ethical requirement.

17. In my 20 years of practice, I have never encountered a lawyer who simply abandoned a client in this manner.

18. Goldberg and I are friendly, in addition to being colleagues, and have had many informational conversations about our employees. At or around the time of Lieberman's termination, Goldberg confided in me that Lieberman's work was not "up to par." In fact, we "compared notes" on what we both thought of her performance, and our experiences were identical.

19. Goldberg expressed frustration to me several times about Lieberman's work and apologized on Lieberman's behalf to me on more than one occasion.

20. After Lieberman departed and we scrambled to find replacement local counsel, the case went far more smoothly. In fact, it was only after we replaced her that the matter advanced enough for settlement talks to bear any fruit at all.

21. At no time did Goldberg complain about, speak negatively about, or even mention Lieberman's maternity leave, her pregnancy, and/or the possibility of her becoming pregnant again, even in our informal conversations about our employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 30, 2022.

_Marc Randazza_
Marc Randazza